EPSTEIN BECKER & GREEN, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5003
(973) 642-1900
Attorneys for Defendant
Roger Ailes

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRETCHEN CARLSON,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ROGER AILES,<br><br>                    Defendant. | **DOCUMENT FILED ELECTRONICALLY**<br><br>Civil Action No.<br><br><br>**NOTICE OF REMOVAL** |

TO:   THE HONORABLE JUDGES OF THE
      UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF NEW JERSEY

      Defendant Roger Ailes, by and through his attorneys, Epstein Becker & Green, P.C.,

respectfully says:

      1.      Plaintiff Gretchen Carlson commenced this action on July 6, 2016, by filing a

Complaint in the Superior Court of New Jersey, Law Division, Bergen County, entitled Gretchen

Carlson v. Roger Ailes, Docket No. BER-L-005016-16.  The action is pending in that Court.

      2.      On July 8, 2016, Mr. Ailes's counsel accepted service of the Summons and

Complaint.

      3.      Copies of the Summons and Complaint, which constitute all of the processes and

pleadings to date, are annexed hereto as Exhibit A.

4.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §
1332(a), and this action may be removed by Mr. Ailes pursuant to the provisions of 28 U.S.C. §
1441(a) because it is a civil action wherein: (1) complete diversity of citizenship exists among
the parties; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and
costs.

5.     There is complete diversity of citizenship between Plaintiff and Mr. Ailes in this
action as follows:

a.     Mr. Ailes is an individual with his principal residence in the State of New
York, where he has residences in Garrison, New York and New York City.  (See
Certification of Roger Ailes, attached hereto as Exhibit B, ¶ 2).  He has resided with his
wife and son in the State of New York for more than five years and plans to continue to
reside there indefinitely.  (Id.).  He has identified his Garrison, New York address as his
home address on his recently filed federal income tax return.  (Id., ¶ 3).  He is registered to
vote in the State of New York and regularly votes there.  (Id., ¶ 4).  The State of New York
is likewise his place of business.  (Id., ¶ 5).  His automobile is registered in New York.
(Id., ¶ 6).  His brokerage and bank accounts are in New York.  (Id., ¶ 7).  Therefore, for
purposes of 28 U.S.C. §1332, by reason of said residence and domicile, Mr. Ailes is a
citizen of the State of New York.

b.     In the Complaint, Plaintiff alleges that she is a resident of Connecticut.  (Ex.
A, ¶ 1).  By reason of said residence and domicile, Plaintiff is a citizen of the State of
Connecticut.

6.     The amount in controversy of Plaintiff's claim is not specified in the Complaint.
In such circumstances, Mr. Ailes is permitted to state the amount in controversy in a "short and

plain" statement without the need for evidentiary submissions.  <u>Dart Cherokee Basin Operating</u> <u>Co. v. Owens</u>, 135 S. Ct. 547, 551 (2014).

      a.      Plaintiff alleges that she was "a successful journalist/reporter/host at Fox News for eleven years."  (Ex. A, ¶ 9).  She further alleges that she was "terminated" from her employment at Fox News on June 23, 2016 (when her employment agreement was not "renewed"), in violation of the New York City Human Rights Law, New York City Administrative Code § 8-107.  (Ex. A, ¶¶ 5, 26(g), and 27).  The Complaint further alleges that the termination and other conduct caused "her <u>significant economic,</u> <u>emotional and professional harm</u>."  (Ex. A, ¶ 7) (emphasis added).

      b.      In the Complaint's Prayer for Relief, Plaintiff seeks compensatory damages, including <u>damages for lost compensation</u>, damages to career path, damage to reputation, pain and suffering damages, and damages for mental anguish.  The Complaint also contains a claim for punitive damages.

      c.      At the time that her employment agreement expired last month, <u>Plaintiff's</u> <u>salary was in excess of $1 million annually</u>.

      d.      Based on Plaintiff's damages claims, including lost compensation, harm to her reputation and career path, and emotional distress damages, upon information and belief, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7.      Therefore, this Court has diversity jurisdiction over the above-captioned action pursuant to 28 U.S.C. §1332, which may properly be removed to the Court pursuant to 28 U.S.C. §1441 <u>et</u> <u>seq</u>.

8.      This Notice of Removal is filed within the time provided by 28 U.S.C. § 1446(b) and the Federal Rules of Civil Procedure.

9.      Upon filing of this Notice of Removal, Mr. Ailes shall give written notice thereof to Nancy Erica Smith, Esq., Smith Mullen, P.C., attorneys for Plaintiff Gretchen Carlson, and Mr. Ailes shall file copies of said Notice of Removal with the Clerk, Superior Court of New Jersey, Law Division, Bergen County, Hackensack, New Jersey.

10.     By filing this notice, Mr. Ailes does not waive any defenses or claims which may be available to him.

WHEREFORE, Mr. Ailes removes the above-captioned action now pending against him in the Superior Court of New Jersey, Law Division, Bergen County, to the United States District Court for the District of New Jersey, wherein it shall proceed as an action originally commenced therein.

<div style="margin-left:40%">

*s/David W. Garland*
David W. Garland
Barry Asen
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5003
Telephone:  (973) 642-1900
Facsimile:  (973) 642-0099
Email:  BAsen@ebglaw.com
E-mail:  DGarland@ebglaw.com
Attorneys for Defendant Roger Ailes

</div>

Dated:  July 8, 2016

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this date I caused a copy of the foregoing Notice of Removal to be served upon counsel for Plaintiff via FedEx Overnight Delivery to Nancy Erica Smith, Esq., Smith Mullin, P.C., 240 Claremont Avenue, Montclair, New Jersey 07042.  I hereby further certify that I caused copies of Certification Pursuant to Local Civil Rule 11.2, and Civil Cover Sheet to be served upon counsel for Plaintiff via FedEx Overnight Delivery to Nancy Erica Smith, Esq., Smith Mullin, P.C., 240 Claremont Avenue, Montclair, New Jersey 07042.  I hereby further certify that I caused two copies of the foregoing documents to be served via FedEx Overnight Delivery to the Clerk, Superior Court of New Jersey, Bergen County Courthouse, 10 Main Street, Room 115, Hackensack, New Jersey 07601.

*s/ David W. Garland*
David W. Garland
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5003
Telephone:  (973) 642-1900
Facsimile:  (973) 642-0099
Email:  DGarland@ebglaw.com

Dated:  July 8, 2016

# EXHIBIT A

**SUMMONS**

| Attorney(s) | Smith Mullin, P.C. |
|---|---|
| Office Address | 240 Claremont Avenue |

| Town, State, Zip Code | Montclair, New Jersey  07042 |
|---|---|
| Telephone Number | (973) 783-7607 |
| Attorney(s) for Plaintiff | Gretchen Carlson |

GRETCHEN CARLSON,

      Plaintiff(s)

  Vs.
ROGER AILES,

      Defendant(s)

**Superior Court of
New Jersey**

| Bergen | COUNTY |
|---|---|
| LAW | DIVISION |

Docket No: _____

**CIVIL ACTION
SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

                                    /s/ Michelle M Smith
                                Clerk of the Superior Court

DATED: _____07/08/2016_____

Name of Defendant to Be Served:    Roger Ailes _____

Address of Defendant to Be Served:   Barry Asen, Esq. Epstein Becker Green 250 Park Ave. NY, NY 10177 _____

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

SMITH MULLIN, P.C.
Nancy Erika Smith, Esq. (Atty. ID #027231980)
240 Claremont Avenue
Montclair, New Jersey 07042
(973) 783-7607
Attorneys for Plaintiffs

RECEIVED

2016 JUL -6  A 8: 44

CIVIL DIVISION
CASE PROCESSING

GRETCHEN CARLSON,                    SUPERIOR COURT OF NEW JERSEY
                                     LAW DIVISION: BERGEN COUNTY
          Plaintiff,                 DOCKET NO.:

                                     Civil Action
     v.

                                     COMPLAINT AND JURY DEMAND
ROGER AILES,

          Defendant.

Plaintiff Gretchen Carlson ("Carlson" or "plaintiff"), by her undersigned attorneys, says:

## PARTIES

1.     Carlson is a resident of Connecticut who was employed by Fox News in New York City as the host of the afternoon program "The Real Story with Gretchen Carlson."

2.     Carlson is a graduate of Stanford University, a former Miss America (1989), an accomplished concert violinist, a best-selling author, an award-winning journalist and a Trustee of the March of Dimes. Carlson has had a successful career in television as a reporter, commentator and program host.

3.     Defendant Roger Ailes ("Ailes") is a resident of Cresskill, New Jersey. Ailes is the Chairman and CEO of Fox News.

## NATURE OF THE CASE

4.     This case arises from violations by Ailes of the New York City Human Rights Law, New York City Administrative Code § 8-107. Ailes has unlawfully retaliated against

1

Carlson and sabotaged her career because she refused his sexual advances and complained about severe and pervasive sexual harassment.

5.      Ailes retaliated against Carlson in various ways, as described below, including by terminating her employment on June 23, 2016, and, prior thereto, by, among other things, ostracizing, marginalizing and shunning her after making clear to her that these "problems" would not have existed, and could be solved, if she had a sexual relationship with him.

6.      When Carlson met with Ailes to discuss the discriminatory treatment to which she was being subjected, Ailes stated: "I think you and I should have had a sexual relationship a long time ago and then you'd be good and better and I'd be good and better," adding that "sometimes problems are easier to solve" that way. Carlson rebuffed Ailes' sexual demands at that meeting, and nine months later, Ailes ended her career at Fox News.

7.      As a direct and proximate result of Carlson's refusing Ailes' sexual advances, and in retaliation for Carlson's complaints about discrimination and harassment, Ailes terminated her employment, causing her significant economic, emotional and professional harm.

## COUNT ONE

8.      After working for five years as a news correspondent and co-host of "The Saturday Early Show" on CBS News, Carlson joined Fox News in 2005.

9.      Carlson was a conscientious, hard-working, and successful journalist/reporter/host at Fox News for eleven years during which she interviewed numerous political leaders and celebrities, including Barack Obama, Hillary Clinton, Henry Kissinger, Donald Trump, George W. Bush, Laura Bush, Condoleezza Rice, Tony Blair, Colin Powell and Madeline Albright. Notwithstanding her strong performance and tireless work ethic, however, Ailes denied Carlson fair compensation, desirable assignments and other career-enhancing opportunities in retaliation

2

for her complaints of harassment and discrimination and because she rejected his sexual advances.

10.  For seven and one-half years, Carlson was a popular co-host of the "Fox & Friends" morning show, which achieved higher ratings than any other cable news morning show.

11.  On or about September 3, 2009, Carlson complained to her supervisor that one of her co-hosts on Fox & Friends, Steve Doocy, had created a hostile work environment by regularly treating her in a sexist and condescending way, including by putting his hand on her and pulling down her arm to shush her during a live telecast.

12.  Doocy engaged in a pattern and practice of severe and pervasive sexual harassment of Carlson, including, but not limited to, mocking her during commercial breaks, shunning her off air, refusing to engage with her on air, belittling her contributions to the show, and generally attempting to put her in her place by refusing to accept and treat her as an intelligent and insightful female journalist rather than a blond female prop.

13.  After learning of Carlson's complaints, Ailes responded by calling Carlson a "man hater" and "killer" and telling her that she needed to learn to "get along with the boys."

14.  Ailes retaliated against Carlson and damaged her career by, among other things, assigning her fewer of the hard-hitting political interviews that are coveted by political correspondents (notwithstanding that she had received acclaim for her political interviews), removing her from her regular once-a-week appearances on the highly-rated "Culture Warrior" segment of "The O'Reilly Factor," reducing her appearances during the 6:00 a.m. hour (where she had generated increased ratings), and directing that she not be showcased at all.

15.  In doing these things, Ailes did not act in the interests of Fox News, but instead pursued a highly personal agenda.

3

16.     In 2013, in further retaliation for her refusal to accede to sexual harassment and retaliation, Ailes fired Carlson from "Fox & Friends."

17.     Ailes reassigned Carlson to the 2 p.m. to 3 p.m. EST time slot, substantially reduced her compensation (even though, as a solo program host, her workload increased), and refused to provide her with anywhere near the level of network media support and promotion provided to other Fox News hosts who did not complain about harassment and rebuff his sexual advances.

18.     Despite the lack of promotional or other network support, Carlson continued to work diligently and her show achieved success by delivering solid and consistent ratings increases up until the day she was terminated. In fact, Carlson's show consistently ranked number one among cable news programs in her time slot and achieved its highest Nielson ratings ever in the final quarter of 2015 and the first quarter of 2016, with ratings in her final month of June 2016 up 33% in total viewers year to date. This success shows that there was no legitimate business reason for terminating Ms. Carlson.

19.     Unable to deny Carlson's on-air skills, Ailes admitted that she is smart, well-prepared and one of the best interviewers at Fox News.

20.     On those occasions when he spoke directly with Carlson, Ailes injected sexual and/or sexist comments and innuendo into their conversations by, among other things:

a.     Claiming that Carlson saw everything as if it "only rains on women" and admonishing her to stop worrying about being treated equally and getting "offended so God damn easy about everything."

b.     Describing Carlson as a "man hater" and a "killer" who tried to "show up the boys" on Fox & Friends.

4

      c.     Ogling Carlson in his office and asking her to turn around so he could view her posterior.

      d.     Commenting that certain outfits enhanced Carlson's figure and urging her to wear them every day.

      e.     Commenting repeatedly about Carlson's legs.

      f.     Lamenting that marriage was "boring," "hard" and "not much fun."

      g.     Wondering aloud how anyone could be married to Carlson, while making sexual advances by various means, including by stating that if he could choose one person to be stranded with on a desert island, she would be that person.

      h.     Stating "I'm sure you [Carlson] can do sweet nothings when you want to."

      i.     Asking Carlson how she felt about him, followed by:  "Do you understand what I'm saying to you?"

      j.     Boasting to other attendees (at an event where Carlson walked over to greet him) that he always stays seated when a woman walks over to him so she has to "bend over" to say hello.

      k.     Embarrassing Ms. Carlson by stating to others in her presence that he had "slept" with three former Miss Americas but not with her.

      l.     Telling Carlson that she was "sexy," but "too much hard work."

      21.     In September 2015, Carlson again sought to bring to an end the retaliatory and discriminatory treatment she had endured by asking to meet with Ailes.

      22.     During that meeting in Ailes' office on September 16, 2015, Ailes stated to Carlson: "I think you and I should have had a sexual relationship a long time ago and then you'd

be good and better and I'd be good and better," adding that "sometimes problems are easier to solve" that way.

23.     Prior to and during that meeting, Ailes had made it clear to Carlson that he had the power to make anything happen for her if she listened to him and "underst[ood]" what he was saying.

24.     Carlson refused to engage in a sexual relationship or participate in sexual banter with Ailes so Ailes retaliated.

25.     In further retaliation for her opposition to sexual harassment and her unwillingness to have a sexual relationship with him, Ailes consistently denied plaintiff various opportunities that were afforded to other Fox News hosts, by, among other things:

   a.     Reducing her compensation to a level that was greatly disproportionate to that of similarly-situated male employees and others who had not complained about discrimination and harassment;

   b.     severely curtailing her appearances as a guest commentator on prime time shows, as she had regularly done in the past;

   c.     blocking her from appearing as a substitute host on prime time or daytime panel shows;

   d.     refusing to assign her to cover high-visibility events or conduct important interviews;

   e.     refusing to give her social media, public relations and advertising support anywhere close to the support given other hosts who did not complain about discrimination and harassment;

   f.     shunning, ostracizing and humiliating her, both publicly and privately; and

6

g.   decreeing that her contract not be renewed on June 23, 2016.

26.   Ailes undertook these discriminatory and retaliatory actions in his individual capacity and for personal and unlawful purposes.  His retaliation against Carlson was outside the scope of his authority, employment and agency at Fox News, which has adopted and professes to support anti-discrimination, anti-harassment and anti-retaliation policies.

27.   By and through his creation of a discriminatory, hostile and harassing work environment, his demands for sexual favors, and his retaliation against Carlson for her objections to discrimination and retaliation, Ailes has violated the New York City Human Rights Law.

28.   As a direct and proximate result of Ailes' harassing, discriminatory and retaliatory treatment of her, plaintiff has suffered, and continues to suffer, adverse job consequences, including economic damages, pain, mental anguish, loss of enjoyment of life and damage to her reputation and career.

**WHEREFORE**, plaintiff demands judgment against Ailes as follows:

A.   Compensatory damages, including lost compensation, damage to career path, damage to reputation and pain and suffering damages;

B.   Damages for mental anguish;

C.   Reimbursement for negative tax consequences resulting from a jury verdict;

D.   Punitive damages;

E.   Attorneys' fees and costs of suit; and

7

F.    Such other relief as the court may deem equitable and just.

SMITH MULLIN, P.C.
Attorneys for Plaintiff

BY: _____
NANCY ERIKA SMITH

Dated:  July 6, 2016

### JURY DEMAND

Plaintiff Gretchen Carlson demands trial by jury with respect to all issues that are so triable.

SMITH MULLIN, P.C.
Attorneys for Plaintiff

BY: _____
NANCY ERIKA SMITH

Dated:  July 6, 2016

### CERTIFICATION

Pursuant to New Jersey Court *Rule* 4:5-1, counsel for Plaintiff hereby certifies that to her knowledge, no matter related to this one is currently pending in either arbitration or litigation.

SMITH MULLIN, P.C.
Attorneys for Plaintiff

BY: _____
NANCY ERIKA SMITH

Dated:  July 6, 2016

8

**EXHIBIT B**

EPSTEIN BECKER & GREEN, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5003
(973) 642-1900
Attorneys for Defendant Roger Ailes

<div align="center">

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| GRETCHEN CARLSON,<br><br>          Plaintiff,<br><br>          v.<br><br>ROGER AILES,<br><br>          Defendant. | **DOCUMENT FILED ELECTRONICALLY**<br><br>Civil Action No.<br><br>**CERTIFICATION OF ROGER AILES IN SUPPORT OF NOTICE OF REMOVAL** |

ROGER AILES, of full age, hereby certifies and says:

1.    I have personal knowledge of the matters set forth herein.

2.    I consider my primary residence to be the State of New York, where I have residences in Garrison, New York and New York City. I have resided with my wife and son in the State of New York for more than five years and plan to continue to reside there indefinitely.

3.    On the first page of my recently filed federal and New York State income tax returns, I identified my Garrison, New York address as my home address.

4.    I am registered to vote in the State of New York and regularly vote there.

5.    I am the Chairman and Chief Executive Officer of the Fox News Network, LLC, and my place of business is at 1211 Avenue of the Americas, New York, NY 10016.

6.    My automobile is registered in New York.

7.    My brokerage and bank accounts are in New York.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on July 8, 2016.

_____
ROGER AILES