SMITH MULLIN, P.C.
Nancy Erika Smith, Esq.
240 Claremont Avenue
Montclair, New Jersey 07042
(973) 783-7607

GOLENBOCK EISEMAN ASSOR BELL
 & PESKOE LLP
Martin S. Hyman, Esq.
Matthew C. Daly, Esq.
711 Third Avenue
New York, New York 10017
(212) 907-7300
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------x
GRETCHEN CARLSON,          :   Civil Action No.: 2:16-cv-04138-JLL-JAD
                           :
         Plaintiff,        :
                           :
    v.                     :   Civil Action
                           :
ROGER AILES,               :
                           :   AMENDED COMPLAINT, REQUEST FOR
         Defendant.        :   DECLARATORY JUDGMENT AND
---------------------------------x   DEMAND FOR JURY TRIAL

Plaintiff Gretchen Carlson ("Carlson" or "plaintiff"), by her undersigned attorneys, says:

### PARTIES

1. Carlson is a resident of Connecticut who was employed by Fox News in New York City as the host of the afternoon program "The Real Story with Gretchen Carlson."

2. Carlson is a graduate of Stanford University, a former Miss America (1989), an accomplished concert violinist, a best-selling author, an award-winning journalist and a Trustee of

1

the March of Dimes. Carlson has had a successful career in television as a reporter, commentator and program host.

3. Defendant Roger Ailes ("Ailes") is a resident of Cresskill, New Jersey. Ailes is the Chairman and CEO of Fox News.

## NATURE OF THE CASE

4. This case arises from violations by Ailes of the New York City Human Rights Law, New York City Administrative Code § 8-107. Ailes has unlawfully retaliated against Carlson and sabotaged her career because she refused his sexual advances and complained about severe and pervasive sexual harassment.

5. Ailes retaliated against Carlson in various ways, as described below, including by terminating her employment on June 23, 2016, and, prior thereto, by, among other things, ostracizing, marginalizing and shunning her after making clear to her that these "problems" would not have existed, and could be solved, if she had a sexual relationship with him.

6. When Carlson met with Ailes to discuss the discriminatory treatment to which she was being subjected, Ailes stated: "I think you and I should have had a sexual relationship a long time ago and then you'd be good and better and I'd be good and better," adding that "sometimes problems are easier to solve" that way. Carlson rebuffed Ailes' sexual demands at that meeting, and nine months later, Ailes ended her career at Fox News.

7. As a direct and proximate result of Carlson's refusing Ailes' sexual advances, and in retaliation for Carlson's complaints about discrimination and harassment, Ailes terminated her employment, causing her significant economic, emotional and professional harm.

2

## COUNT ONE

8. After working for five years as a news correspondent and co-host of "The Saturday Early Show" on CBS News, Carlson joined Fox News in 2005.

9. Carlson was a conscientious, hard-working, and successful journalist/reporter/host at Fox News for eleven years during which she interviewed numerous political leaders and celebrities, including Barack Obama, Hillary Clinton, Henry Kissinger, Donald Trump, George W. Bush, Laura Bush, Condoleezza Rice, Tony Blair, Colin Powell and Madeline Albright. Notwithstanding her strong performance and tireless work ethic, however, Ailes denied Carlson fair compensation, desirable assignments and other career-enhancing opportunities in retaliation for her complaints of harassment and discrimination and because she rejected his sexual advances.

10. For seven and one-half years, Carlson was a popular co-host of the "Fox & Friends" morning show, which achieved higher ratings than any other cable news morning show.

11. On or about September 3, 2009, Carlson complained to her supervisor that one of her co-hosts on Fox & Friends, Steve Doocy, had created a hostile work environment by regularly treating her in a sexist and condescending way, including by putting his hand on her and pulling down her arm to shush her during a live telecast.

12. Doocy engaged in a pattern and practice of severe and pervasive sexual harassment of Carlson, including, but not limited to, mocking her during commercial breaks, shunning her off air, refusing to engage with her on air, belittling her contributions to the show, and generally attempting to put her in her place by refusing to accept and treat her as an intelligent and insightful female journalist rather than a blond female prop.

13. After learning of Carlson's complaints, Ailes responded by calling Carlson a "man hater" and "killer" and telling her that she needed to learn to "get along with the boys."

3

14. Ailes retaliated against Carlson and damaged her career by, among other things, assigning her fewer of the hard-hitting political interviews that are coveted by political correspondents (notwithstanding that she had received acclaim for her political interviews), removing her from her regular once-a-week appearances on the highly-rated "Culture Warrior" segment of "The O'Reilly Factor," reducing her appearances during the 6:00 a.m. hour (where she had generated increased ratings), and directing that she not be showcased at all.

15. In doing these things, Ailes did not act in the interests of Fox News, but instead pursued a highly personal agenda.

16. In 2013, in further retaliation for her refusal to accede to sexual harassment and retaliation, Ailes fired Carlson from "Fox & Friends."

17. Ailes reassigned Carlson to the 2 p.m. to 3 p.m. EST time slot, substantially reduced her compensation (even though, as a solo program host, her workload increased), and refused to provide her with anywhere near the level of network media support and promotion provided to other Fox News hosts who did not complain about harassment and rebuff his sexual advances.

18. Despite the lack of promotional or other network support, Carlson continued to work diligently and her show achieved success by delivering solid and consistent ratings increases up until the day she was terminated. In fact, Carlson's show consistently ranked number one among cable news programs in her time slot and achieved its highest Nielson ratings ever in the final quarter of 2015 and the first quarter of 2016, with ratings in her final month of June 2016 up 33% in total viewers year to date. This success shows that there was no legitimate business reason for terminating Ms. Carlson.

19. Unable to deny Carlson's on-air skills, Ailes admitted that she is smart, well-prepared and one of the best interviewers at Fox News.

20. On those occasions when he spoke directly with Carlson, Ailes injected sexual and/or sexist comments and innuendo into their conversations by, among other things:

a. Claiming that Carlson saw everything as if it "only rains on women" and admonishing her to stop worrying about being treated equally and getting "offended so God damn easy about everything."

b. Describing Carlson as a "man hater" and a "killer" who tried to "show up the boys" on Fox & Friends.

c. Ogling Carlson in his office and asking her to turn around so he could view her posterior.

d. Commenting that certain outfits enhanced Carlson's figure and urging her to wear them every day.

e. Commenting repeatedly about Carlson's legs.

f. Lamenting that marriage was "boring," "hard" and "not much fun."

g. Wondering aloud how anyone could be married to Carlson, while making sexual advances by various means, including by stating that if he could choose one person to be stranded with on a desert island, she would be that person.

h. Stating "I'm sure you [Carlson] can do sweet nothings when you want to."

i. Asking Carlson how she felt about him, followed by: "Do you understand what I'm saying to you?"

j. Boasting to other attendees (at an event where Carlson walked over to greet him) that he always stays seated when a woman walks over to him so she has to "bend over" to say hello.

5

k. Embarrassing Ms. Carlson by stating to others in her presence that he had "slept" with three former Miss Americas but not with her.

l. Telling Carlson that she was "sexy," but "too much hard work."

21. In September 2015, Carlson again sought to bring to an end the retaliatory and discriminatory treatment she had endured by asking to meet with Ailes.

22. During that meeting in Ailes' office on September 16, 2015, Ailes stated to Carlson: "I think you and I should have had a sexual relationship a long time ago and then you'd be good and better and I'd be good and better," adding that "sometimes problems are easier to solve" that way.

23. Prior to and during that meeting, Ailes had made it clear to Carlson that he had the power to make anything happen for her if she listened to him and "underst[ood]" what he was saying.

24. Carlson refused to engage in a sexual relationship or participate in sexual banter with Ailes so Ailes retaliated.

25. In further retaliation for her opposition to sexual harassment and her unwillingness to have a sexual relationship with him, Ailes consistently denied plaintiff various opportunities that were afforded to other Fox News hosts, by, among other things:

a. Reducing her compensation to a level that was greatly disproportionate to that of similarly-situated male employees and others who had not complained about discrimination and harassment;

b. severely curtailing her appearances as a guest commentator on prime time shows, as she had regularly done in the past;

c. blocking her from appearing as a substitute host on prime time or daytime panel shows;

d. refusing to assign her to cover high-visibility events or conduct important interviews;

e. refusing to give her social media, public relations and advertising support anywhere close to the support given other hosts who did not complain about discrimination and harassment;

f. shunning, ostracizing and humiliating her, both publicly and privately; and

g. decreeing that her contract not be renewed on June 23, 2016.

26. Ailes undertook these discriminatory and retaliatory actions in his individual capacity and for personal and unlawful purposes. His retaliation against Carlson was outside the scope of his authority, employment and agency at Fox News, which has adopted and professes to support anti-discrimination, anti-harassment and anti-retaliation policies.

27. By and through his creation of a discriminatory, hostile and harassing work environment, his demands for sexual favors, and his retaliation against Carlson for her objections to discrimination and retaliation, Ailes has violated the New York City Human Rights Law.

28. As a direct and proximate result of Ailes' harassing, discriminatory and retaliatory treatment of her, plaintiff has suffered, and continues to suffer, adverse job consequences, including economic damages, pain, mental anguish, loss of enjoyment of life and damage to her reputation and career.

## COUNT TWO

29. Plaintiff repeats and realleges the previous allegations as if set forth at length herein.

30. On July 8, 2016, Defendant Ailes invoked the jurisdiction of the United States District Court for the District of New Jersey by filing a removal petition and a motion to compel plaintiff to arbitrate her harassment and retaliation claims against Defendant Ailes. Since then, Defendant Ailes has continued to invoke the jurisdiction of this Court by filing additional motions.

31. Plaintiff never agreed to arbitrate any claims with Defendant Ailes.

32. Defendant Ailes is not a party to any arbitration agreement with Plaintiff.

33. The arbitration agreement to which Defendant Ailes claims to be a party specifically omits him as a party or a beneficiary thereof.

34. By and through his actions, Defendant Ailes seeks to deprive Plaintiff Carlson of her statutory and Constitutional rights to a jury trial.

**WHEREFORE:**

A. Plaintiff Carlson seeks a Declaratory Judgment that she has not waived her right to a jury trial and that none of Plaintiff's claims are subject to a valid or applicable arbitration agreement.

Additionally, Plaintiff demands judgment against Ailes as follows:

B. Compensatory damages, including lost compensation, damage to career path, damage to reputation and pain and suffering damages;

C. Damages for mental anguish;

D. Reimbursement for negative tax consequences resulting from a jury verdict;

E. Punitive damages;

F. Attorneys' fees and costs of suit; and

G. Such other relief as the court may deem equitable and just.

SMITH MULLIN, P.C.
Attorneys for Plaintiff

BY: _____
NANCY ERIKA SMITH

Dated: July 18, 2016

## JURY DEMAND

Plaintiff Gretchen Carlson demands trial by jury on all issues, including whether any of her harassment and retaliation claims are subject to a valid and applicable arbitration agreement.

SMITH MULLIN, P.C.
Attorneys for Plaintiff

BY: _____
NANCY ERIKA SMITH

Dated: July 18, 2016

## CERTIFICATION

Pursuant to F.R.C.P. 11.2, counsel for Plaintiff hereby certifies that to her knowledge, this matter is the subject of another action pending in the United States District Court for the Southern District of New York, *Roger Ailes v. Gretchen Carlson*, Civil Action No. 16-cv-5671.

SMITH MULLIN, P.C.
Attorneys for Plaintiff

BY: _____
NANCY ERIKA SMITH

Dated: July 18, 2016